**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEBBIE KVINLAUG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **CLAIRE'S STORES, INC.,** | ) | **09 C 3511** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Debbie Kvinlaug has sued her former employer, Claire's Stores, Inc. ("Claire's"), and alleges that it wrongfully denied her benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001, *et seq.* (Count I) or, in the alternative, breached a contract (Count II) and violated the Illinois Wage Payment and Collection Act (Count III). Defendant has moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Counts II and III of the Second Amended Complaint. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

## Facts

Kvinlaug was a Claire's executive employed at the Claire's headquarters in Hoffman Estates, Illinois. (Second Am. Compl. ¶¶ 2, 9.) During her employment, the parties entered into a Change in Control Termination Protection Agreement ("Agreement"). (*Id.* ¶¶ 9, 17, 18.) Pursuant to the Agreement, upon the occurrence of certain conditions, Kvinlaug was entitled to receive benefits, bonuses, deferred compensation, severance payments, continuation of health benefits and other compensation. (*Id.* ¶ 18.) The Agreement provides that when there is a

change of control in the company (as defined in the Claire's Amended and Restated 2005 Incentive Compensation Plan), Kvinlaug would be entitled to benefits if (1) "good reason" exists for her resignation and (2) she gives proper notice within one year of her obtaining knowledge of the good reason. (*Id.* ¶¶ 21, 32; *id.*, Ex. A, Change in Control Termination Protection Agreement ¶ 4; *id.*, Schedule A, ¶ X(1).) The Agreement defines "good reason" in part as "any materially adverse alteration in Executive's title or in the nature or status of Executive's responsibilities or conditions of employment from those in effect immediately prior to such Change in Control." (*Id.* ¶ 23; *see id.*, Ex. A, Change in Control Termination Protection Agreement, Schedule A, ¶ X(1).)

A change of control within the meaning of the Agreement occurred in May 2007. (Second Am. Compl. ¶ 24.) On March 13, 2008, Kvinlaug was informed of a pending material adverse alteration in her title and the nature and status of her responsibilities and work conditions. (*Id.* ¶¶ 25-27.) Kvinlaug provided Claire's with a notice of her resignation on February 2, 2009; February 17, 2009; and March 9, 2009, and subsequently applied for benefits under the Agreement. (*Id.* ¶¶ 30, 31, 33.) Kvinlaug terminated her employment with Claire's. (*Id.* ¶ 34.) Claire's told Kvinlaug that she was not entitled to the requested benefits. (*Id.* ¶ 31.) Kvinlaug alleges that she has exhausted all administrative remedies available under the terms and conditions of the Agreement and that any further exhaustion of remedies is futile. (*Id.*)


## Discussion

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Even after *Twombly*, courts must still approach motions

under Rule 12(b)(6) by constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal quotations omitted), *cert. denied*, 130 S. Ct. 1141 (2010).  Factual allegations must be enough to raise a right to relief above the speculative level, and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp.*, 550 U.S. at 555 (quotation omitted).

Defendant[1] argues that Kvinlaug's state law claims should be dismissed because she alleges that the contract is subject to ERISA.  (Mem. Law Supp. Def.'s Mot. Dismiss Pl.'s Second Am. Compl. 5-6.)  Kvinlaug argues that determination of ERISA's applicability is premature at this stage of the proceedings.  (Pl.'s Resp. Def.'s Mot. Dismiss 6-7.)

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004).  "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plans regulation would be exclusively a federal concern."  *Id.* (citations omitted).  Thus, ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

An "employee welfare benefit plan is defined by the legislation, 29 U.S.C. § 1002(1)." *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537 (7th Cir. 2000).  Five elements are necessary:

> (1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death,

---

[1] ERISA permits suits to recover benefits only against the Plan as an entity.  *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1490 (7th Cir. 2002); *Powers v. Corn Prods. Int'l, Inc.,* 557 F. Supp. 2d 921, 925 (N.D. Ill. 2008).  If discovery reveals that Kvinlaug has not named the proper defendant, she must amend her complaint to name the correct party.

> unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or *severance benefits*, (5) to participants or their beneficiaries.

*Id.* (emphasis added). "In general, consistent with the broad remedial purpose of ERISA to ensure protection for participants in employee benefit plans, courts in this Circuit construe the definition of an employee welfare benefit plan under ERISA liberally." *Price v. Minn. Life Ins. Co.*, No. 06-cv-1040-DRH, 2008 WL 687131, at *3, (S.D. Ill. Mar. 10, 2008). Where it is possible to determine whether a particular policy is a plan, fund or program under ERISA based on the language of an agreement, the Court may determine preemption on a motion to dismiss. *See, e.g., Winters v. UNUM Life Ins. Co. of Am.*, 232 F. Supp. 2d 918, 921 (W.D. Wis. 2002); *Reber v. Provident Life & Accident Ins. Co.*, 93 F. Supp. 2d 995, 1010 (S.D. Ind. July 16, 2000)*; Gupta v. Freixenet, USA, Inc*., 908 F. Supp. 557, 563 (N.D. Ill. 1995); *Cook v. Standard Ins. Co.*, No. 07-3316, 2008 WL 345539, at *2 (C.D. Ill. Feb. 7, 2008).

The Agreement's language shows that Claire's established the Change in Control Termination plan in order to provide its executives specific severance benefits in the event of a change in control to protect them from risks of a change in control of the company. (*See* Second Am. Compl., Ex. A, Change in Control Termination Protection Agreement.) It is clear that the Agreement is an employee welfare benefit plan because its plain language provides benefits, such as severance payments and continuation of health benefits, to its executives. (*Id.* ¶ 4.) In addition, the Agreement references other employee welfare benefit plans such as Claire's annual incentive bonus plan, deferred compensation plan, Amended and Restated 2005 Incentive Compensation Plan, health benefit plan and long-term disability program. (*See id.* ¶¶ 3(a), 3(b), 4(b); *id*., Schedule A, ¶¶ IV, VI, X(1), XIII.)

However, "[t]he decisive inquiry in determining whether a severance plan falls within ERISA's coverage is whether the plan requires an ongoing administrative program to meet the employer's obligation." *Bowles v. Quantum Chem. Co.,* 266 F.3d 622, 631 (7th Cir. 2001). "ERISA applies when a severance plan potentially places periodic demands on [an employer's] assets that create a need for financial coordination and control." *Id.* (quotation omitted). Because a "requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation," ERISA would not apply. *Id.* (quotation omitted).

In *Bowles*, where multiple employees had a one-year period in which they could request severance benefits such that the employer was required to monitor conditions of employees' employment during that period and benefits could not be mechanically doled out to all covered employees in one lump sum, the Court held that ERISA applied. 266 F.3d at 631. In *Collins v. Ralston Purina Co.*, where the employer faced the possibility of making multiple severance benefit payments to various managers at different times and under different circumstances, the Court held that ERISA applied. 147 F.3d 592, 595-96 (7th Cir. 1998).

Likewise, in the instant case, it is evident that the Agreement is a form contract entered into by Claire's and its executives. (*See* Second Am. Compl., Ex. A, Change in Control Termination Protection Agreement.) Given the size of defendant's operations (*id.* ¶¶ 3, 6(a), 7, 8), it simply would be unreasonable to assume that Kvinlaug was the only executive covered by the Agreement. The Agreement provides that the executive has a one-year period from the time he or she first becomes aware of the existence of "good reason" to resign, *i.e.*, a materially adverse alteration in his or her title or in the nature or status of his or her responsibilities or conditions of employment from those in effect immediately prior to the change in control. (*See*

5

*id.*, Schedule A ¶ X.)  If the resignation for good cause occurs within two years of the change in control, he or she is entitled to payments and benefits provided in the Agreement.  (*See id.* ¶ 4.) The Agreement is similar to those in *Bowles* and *Collins* because it requires Claire's to monitor its executives' conditions of employment during the two-year period after the change in control and Claire's is faced with potential payments to different executives at different times.  As such, the Agreement requires an administrative program as well as financial coordination and control. Accordingly, the Court holds that the Agreement is a plan governed by ERISA.

Next, the Court must determine whether Kvinlaug's breach of contract and Illinois Wage Payment and Collections Act claims relate to the ERISA plan.  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).  Where a state law claim rests upon the terms of an ERISA plan and cannot be resolved without interpreting or applying the terms of an ERISA plan, it relates to an ERISA plan.  *See Bowles,* 266 F.3d at 631; *Rice v. Panchal*, 65 F.3d 637, 646 (7th Cir. 1995).

Because the Court has determined that the Agreement is governed by ERISA, it necessarily follows that Kvinlaug's breach of contract and Illinois Wage Payment and Collection Act claims based on the same agreement relate to an ERISA plan because the claims arose from, and require an interpretation of, an ERISA plan.  In sum, the Court holds that Counts II and III of Kvinlaug's Second Amended Complaint are preempted by ERISA, and therefore Counts II and III are dismissed without prejudice.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion to dismiss Count II and III of the Second Amended Complaint [doc. no. 32].

**SO ORDERED.**                    **ENTERED:**

**March 29, 2010**
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**