UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DEBBIE KVINLAUG, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 09 C 3511 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CLAIRE'S STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiff Debbie Kvinlaug brought this action against her former employer, Defendant Claire's Stores, Inc., alleging that Claire's wrongfully denied her severance benefits due under the parties' Termination Protection Agreement. Earlier this year, Judge Guzmán dismissed Kvinlaug's state law causes of action, leaving only her claim under section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *See* 2010 WL 1325552 (N.D. Ill. Mar. 29, 2010). Claire's moved for summary judgment, and Kvinlaug responded on the merits and also with a motion pursuant to then-Rule 56(f) of the Federal Rules of Civil Procedure, which was re-codified as Rule 56(d) on December 1, 2010. Claire's Stores' motion is denied, and Kvinlaug's motion is denied as moot.

**Background**

Except where noted, the following facts are undisputed, either by the parties' agreement or because the objecting party failed to comply with Local Rule 56.1(b)(3). Claire's Stores is a multinational jewelry and accessories retailer. Kvinlaug was hired by Claire's Boutiques, Inc., a subsidiary of Claire's Stores, in May 1998. In May 2003, Claire's Stores promoted Kvinlaug to Territorial Vice-President ("TVP") of its Southeastern Territory, a position Kvinlaug held while

living in Atlanta. Her initial salary as TVP was $105,000, and by 2006 had risen to a base of $165,000 and a bonus of $30,000.

In May 2006, Kvinlaug was offered and accepted a new position in the Claire's Stores organization, Group Executive Vice-President ("GEVP") for Switzerland, Austria, Germany, France, Spain, and Portugal. Kvinlaug's GEVP position was intrinsically temporary, intended to last no more than three years, and her assignment letter stated that she would be "[a]ssigned a comparable position [to the Southeastern TVP position] for Claire's North America upon completion of assignment and return to the U.S." As GEVP, Kvinlaug received a salary of $250,000 and $200 per month to help maintain her Atlanta residence, was eligible for a bonus, and had eight to ten weeks of paid vacation. Claire's also supplied her with a furnished apartment in Paris, a BMW automobile, and a parking space.

In Fall 2006, Claire's Stores and Kvinlaug (along with other senior employees) entered into a Termination Protection Agreement ("TPA"), which provided that she would receive severance benefits in the event she resigned for "Good Reason" following a change in control of Claire's Stores. The TPA defined "Good Reason" as, among other things, "any materially adverse alteration in Executive's title or in the nature or status of Executive's responsibilities or conditions of employment from those in effect immediately prior to such Change in Control," and provided that Kvinlaug "shall have one year from the time [she] first becomes aware of the existence of Good Reason to resign for Good Reason." In light of Kvinlaug's temporary GEVP assignment in Europe, she and Claire's Stores in March 2007 executed an Addendum to the TPA, which reads in pertinent part:

> You and the Company hereby agree that, solely for purposes of your TPA with the Company, the term "Good Reason" shall be deemed to include (in addition to the terms currently provided under the TPA) the failure by the Company (or any successor thereto) following a Change in Control to

> provide you with a written offer at least [one month] prior to the end of the Term under the TPA [May 28, 2009] for continued employment with the Company upon your return to the United States from France on employment terms that are substantially similar to the terms of your employment that were in effect immediately prior to your current assignment in France.
>
> Except as modified by this letter agreement, your TPA shall continue in full force and effect.

A "Change in Control" occurred on May 29, 2007, when Claire's Stores was acquired by a third party. Several management changes ensued. In May 2007, Mark Smith joined Claire's as President and Managing Director of Europe. Smith met with Kvinlaug in August 2007 and, although the details of the conversation are disputed, directed her to focus on France and also perhaps on Spain and Portugal. In addition, Ingrid Osmundsen was named Chief Executive Officer of Europe, with Osmundsen reporting directly to Smith and Kvinlaug to Osmundsen. Michael Baur joined Claire's in January 2008, with the parties disputing whether, when, and to what extent Baur assumed Kvinlaug's responsibilities for Switzerland, Austria, and Germany.

Claire's announced a five-year plan for Europe at a presentation to its employees on March 13, 2008. Claire's centralized its European operations in the United Kingdom, identified a Senior Management Team to implement the initiative, and replaced Osmundsen with Paul Mildenstein. Claire's divided its European operations into three zones, with Baur leading the zone encompassing Switzerland, Austria, and Germany. Neither Kvinlaug nor her GEVP position was identified as part of the Senior Management Team. "Upset" and "humiliated" by this turn of events, Kvinlaug spoke with Mildenstein and Joe DeFalco, Senior Vice-President of Human Resources, Supply Chain and Logistics, regarding her continued role in Europe and future in the United States. The conversations conveyed that Kvinlaug would not be part of the "go forward" team in Europe.

The parties dispute whether the plan announced on March 13, 2008 materially altered Kvinlaug's GEVP role. Claire's maintains that, aside from having Kvinlaug's report to Mildenstein rather than Osmundsen, the plan did not significantly impact her role. According to Claire's, Kvinlaug continued to work full time; retained her title, salary, and benefits; assumed responsibility for roughly sixteen stores in Belgium; and was not instructed to cease performing any duties she performed prior to March 13, 2008, though she no longer conducted certain meetings and conference calls. Kvinlaug takes a different view, listing a variety of "supervising, managing, directing, overseeing, planning, training, and strategizing" responsibilities that she alleges were diminished or eliminated by the reorganization. Kvinlaug cites, among other things, the cessation of her responsibility for Switzerland, Austria, and Germany; her reduced role in Spain and Portugal; and a reduction in the number of stores and employees for which and for whom she was responsible.

In January 2009, Claire's offered Kvinlaug a position in the United States as a TVP for the Southwestern Region. Claire's told Kvinlaug she could continue residing in Atlanta, but Kvinlaug asserts that remaining in Atlanta while holding the Southwestern TVP position—with its responsibility for Texas, California, and Hawaii—would have entailed significantly longer travel times than her Southeastern TVP assignment. Kvinlaug adds that the Southwestern TVP assignment would have required unfavorable time zone changes, returning home from business trips as late as 2:00 a.m., and the obligation to comply with onerous California regulations.

On February 2, 2009, Kvinlaug sent a letter to Claire's expressing her view that the TPA's "Good Reason" clause had been triggered. A series of communications followed in which the parties disputed whether the clause, in fact, had been triggered. On March 9, 2009, Kvinlaug resigned from Claire's, although due to European labor laws she continued to work

until June 2009. Claire's did not provide Kvinlaug with the severance benefits attending a "Good Cause" resignation under the TPA, and Kvinlaug filed suit.

## Discussion

In his opinion dismissing Kvinlaug's state law causes of action, Judge Guzmán held that the TPA is a welfare benefit plan subject to ERISA. *See* 2010 WL 1325552, at *3. Although Claire's disagrees with that determination, it has not sought reconsideration, and the parties have premised their submissions on a mutual understanding that this case involves the alleged denial of ERISA benefits.

The parties both say that because the TPA does not give the plan administrator discretionary authority to determine eligibility for benefits, a "*de novo* standard" governs this court's "review" of Claire's Stores' decision to deny benefits. The "*de novo* review" terminology, while set forth in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111-15 (1989), and reiterated in *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008), has been disapproved by the Seventh Circuit, which explained:

> *Firestone* holds that '*de novo* review' is the norm in litigation under ERISA. Cases such as this show that '*de novo* review' is a misleading phrase. The law Latin could be replaced by an English word, such as 'independent.' And the word 'review' simply has to go. For what *Firestone* requires is not 'review' of any kind; it is an independent *decision* rather than 'review' that *Firestone* contemplates. The Court repeatedly wrote that litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts. 489 U.S. at 112-13. In a contract suit the judge does not 'review' either party's decision. Instead the court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.

*Krolnik v. Prudential Ins. Co.*, 570 F.3d 841, 843 (7th Cir. 2009). Thus, where (as here) the ERISA plan does not confer discretion on the administrator, this court's role is to independently

decide whether the claimant was entitled to benefits under the plan, not to "review" the denial of benefits. With this in mind, the court considers Claire's Stores' summary judgment motion and Kvinlaug's Rule 56(f) motion.

## I. Claire's Stores' Summary Judgment Motion

In opposing summary judgment, Kvinlaug advances two independent grounds for why she had "Good Reason" to resign: (1) her GEVP duties in Europe were materially diminished; and (2) Claire's failed to offer her a substantially similar TVP position upon her return from Europe. Summary judgment is inappropriate if a reasonable factfinder could find for Kvinlaug on either ground. As shown below, a reasonable factfinder could find for Kvinlaug on both grounds.

### A. Diminishment of Kvinlaug's Duties as GEVP

As noted above, the TPA defines "Good Reason" as "any materially adverse alteration in Executive's title or in the nature or status of Executive's responsibilities or conditions of employment from those in effect immediately prior to such Change in Control." Kvinlaug asserts that her GEVP responsibilities were materially altered when Claire's announced its five-year plan and new Senior Management Team for Europe on March 13, 2008, and at points thereafter. She points to a reduction in the stores, employees, indirect and direct reports, and countries for which she was responsible, and a diminishment in the sales volume and operating expenses within her purview. These changes, Kvinlaug asserts, together amounted to a "materially adverse alteration" within the meaning of the TPA. Claire's responds with two arguments that might carry the day at trial, but that do not provide legitimate grounds for summary judgment.

*First*, Claire's contends that the TPA was not intended to cover changes to Kvinlaug's role as GEVP in Europe. Claire's notes that the position was intrinsically temporary, slated to end within three years regardless of any change in control, and maintains that the TPA's "Good Reason" clause cannot logically apply to the diminishment of responsibilities attached to a job destined for sure elimination. Because Claire's would have been within its rights to *eliminate* Kvinlaug's GEVP position at any time without implicating the TPA, Claire's asks, how could the lesser step of reducing the position's responsibilities constitute "Good Reason" for Kvinlaug's resignation?

The argument is not without intuitive appeal. But while the greater power often includes the lesser, it does not always do so, *see Metro. Milwaukee Ass'n of Commerce v. Milwaukee County*, 431 F.3d 277, 278-79 (7th Cir. 2005) (State's greater power to not hire articular contractor does not give State the lesser power to condition hiring on contractor's agreement to provide employees with rights greater than those required by federal labor law), and it may not do so here given the express terms of the TPA and, especially, the Addendum. Significantly diminishing Kvinlaug's GEVP responsibilities constitutes a "materially adverse alteration in … the nature or status of [Kvinlaug's] responsibilities," falling literally within the TPA's definition of "Good Reason," and a reasonable factfinder could (though not must) conclude on the record that Kvinlaug's GEVP responsibilities were significantly diminished. Given the TPA's broad definition of "Good Reason," Claire's might have thought to include in the Addendum a clause providing, for example, that in the context of Kvinlaug's temporary GEVP responsibilities, "Good Cause" is *limited* to the failure to offer her a comparable TVP position upon her return to the United States. As noted above, however, the Addendum reads:

> [T]he term "Good Reason" shall be deemed to include (*in addition to* the terms currently provided under the TPA) the failure by the Company (or

> any successor thereto) following a Change in Control to provide you with a written offer at least [one month] prior to the end of the Term under the TPA for continued employment with the Company upon your return to the United States from France on employment terms that are substantially similar to the terms of your employment that were in effect immediately prior to your current assignment in France.
>
> Except as modified by this letter agreement, *your TPA shall continue in full force and effect*.

(Emphasis added). A reasonable factfinder could conclude that the Addendum kept the TPA intact, and that it listed the failure to offer Kvinlaug a comparable TVP position upon her return stateside as merely an *additional* example of what might otherwise constitute "Good Reason," including materially diminishing her GEVP responsibilities in Europe.

Accordingly, it cannot be said on summary judgment that the TPA's "Good Reason" clause categorically excludes any materially adverse alteration of Kvinlaug's responsibilities as GEVP. Claire's is free to advance its interpretation of the TPA and Addendum at trial, unless Kvinlaug successfully moves pretrial for a finding that her interpretation prevails as a matter of law. In any event, Claire's is free to press at trial its view that Kvinlaug's GEVP duties did not suffer a materially adverse alteration within the meaning of the TPA.

*Second*, and in the alternative, Claire's argues that Kvinlaug resigned too late to obtain benefits under the "Good Reason" clause. As noted above, the TPA provides that Kvinlaug may receive "Good Reason" benefits only if she resigns within "one year from the time [she] first bec[ame] aware of the existence of Good Reason to resign for Good Reason." Claire's argues that the date Kvinlaug resigned, March 9, 2009, was more than a year after her GEVP responsibilities had been altered. In support, Claire's notes that Mark Smith, at his August 2007 meeting with Kvinlaug, instructed Kvinlaug to focus her efforts on France (and perhaps Spain and Portugal). Claire's maintains that this meeting, as well as the January 2008 hiring of

Michael Baur as Managing Director of Switzerland, Austria, and Germany, put Kvinlaug on notice that her responsibilities for Switzerland, Germany, and Austria had been diminished.

That submission might carry the day at trial. However, Kvinlaug has adduced sufficient facts to substantiate her position that her responsibilities were materially diminished on and after the presentation on March 13, 2008—within a year of her resignation on March 9, 2009. In addition to Claire's Stores' failure to list Kvinlaug and her GEVP position as part of the Senior Management Team in Europe, Kvinlaug presents evidence that she participated in weekly conference calls with the U.S. merchant team before but not after March 13, 2008, and that her role in monthly merchandise planning review meetings shifted from active to passive. Kvinlaug further notes that eight of the twelve store operation positions in Paris reporting to her were eliminated between October 2008 and January 2009. Kvinlaug maintains that despite Baur's hiring in January 2008, her role in Switzerland, Austria and Germany did not diminish materially until after March 13, 2008. And Kvinlaug lists several of her "activities or responsibilities" that were completely eliminated after March 13, 2008, including financial goal establishment; participation in the executive level strategy planning meeting; store operations in Paris; regional sales managers reporting to Kvinlaug for Switzerland, Austria, Germany, and Spain; directing and setting strategies for Continental Europe; providing the best practice information to store operation teams in Paris, Zurich, and Madrid; in-store presentations; merchandise planning; loss prevention; and involvement with the distribution center.

Whether these changes actually occurred on or after March 13, 2008, and the materiality (or immateriality) of the post-March 9, 2008 changes in light of Kvinlaug's overall responsibilities, are fact issues inappropriate for resolution on summary judgment. Accordingly,

unresolved questions regarding the alleged diminishment of Kvinlaug's GEVP responsibilities require denial of Claire's Stores' summary judgment motion.

> **B.  Failure to Offer Kvinlaug a "Substantially Similar" TVP Position Upon Her Return From Europe**

As noted above, the Addendum provides that "Good Reason" includes Claire's Stores' failure to provide Kvinlaug "with a written offer" by April 28, 2009 "for continued employment with the Company upon your return to the United States from France on employment terms that are substantially similar to the terms of your employment that were in effect immediately prior to your current assignment in France."  A second ground for denying summary judgment arises from the court's inability to conclude as a matter of law that the "terms" of the Southwestern TVP position that Claire's offered Kvinlaug were "substantially similar" to the "terms" of the Southeastern TVP position she held prior to her posting in Europe.  Claire's told Kvinlaug she did not have to relocate from Atlanta to take the Southwestern TVP position—perhaps because the TPA provides that relocating an employee's principal place of employment more than 35 miles is *per se* "Good Cause."  But Kvinlaug asserts that the increased travel and other downsides (*e.g.*, dealing with California regulatory issues) of the Southwestern TVP position made it significantly less attractive than the Southeastern TVP position.  Claire's disagrees, but deciding who is correct requires examination of several factual issues—including the precise nature of the travel and other differences between the two positions and, once those differences are ascertained, determining whether they are significant enough in context to render the positions not "substantially similar"—that cannot be resolved on summary judgment.

Claire's maintains that even if the Southwestern TVP position was not "substantially similar" to the Southeastern TVP position, Kvinlaug is not entitled to severance benefits under the TPA because her March 9, 2009 resignation deprived Claire's of its rightful opportunity to

offer another "substantially similar" position by the April 28, 2009 deadline. The argument is without merit. The principle of contract law invoked by Claire's—that "the failure to perform a contract according to its terms is excused, when such performance is prevented by the acts of the opposite party, as where such party improperly refuses to allow performance, or where he or she, by his or her acts or conduct, makes performance impossible," 12A Ill. Law & Prac. Contracts § 258—is beyond dispute. Yet Claire's fails to explain how Kvinlaug's March 9, 2009 resignation prevented it from tendering a second, more attractive offer by April 28, 2009, particularly given that Kvinlaug continued to work for Claire's until June 2009.

## II. Kvinlaug's Rule 56(f) Motion

In addition to responding on the merits to Claire's Stores' summary judgment motion, Kvinlaug filed a Rule 56(f) (now Rule 56(d)) motion asserting that Claire's has not produced discovery essential to her opposition to summary judgment. Because summary judgment has been denied on the present record, Kvinlaug's motion is moot.

To avoid unnecessary motion practice, the court will add that Kvinlaug's motion would fail on the merits in any event. The discovery that (according to Kvinlaug) Claire's Stores withheld consists of the ERISA administrative record, which (again according to Kvinlaug, with support from the First and Tenth Circuits) provides the only evidence this court may consider in deciding whether Claire's breached the TPA. *See Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010); *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007). Claire's responds that no true "administrative record" exists because it did not consider the TPA to be an ERISA plan, and adds that all documents that conceivably could be deemed part of the administrative record have been produced. The dispute amounts to nothing in this Circuit, where so long as the ERISA plan does not confer interpretative or operational discretion on its

administrator, a court deciding whether the denial of benefits violates ERISA may consider evidence outside the administrative record. *See Krolnik*, 570 F.3d at 842-43; *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 n.4 (7th Cir. 1994). Because the court "decides on the record made in the litigation," *Krolnik*, 570 F.3d at 843, Kvinlaug's concerns about what constitutes the administrative record, and about whether Claire's Stores produced an intact administrative record, are immaterial.

## Conclusion

For the foregoing reasons, Claire's summary judgment motion is denied, and Kvinlaug's Rule 56(f) motion is denied as moot.

May 2, 2011

_____
United States District Judge